UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10160-WGY

UNITED STATES OF AMERICA

v.

GEORGE MONTILLA

# MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION FOR DETENTION

July 1, 2004

DEIN, M.J.

## I. GOVERNMENT'S MOTION FOR DETENTION

The defendant was charged in a criminal complaint, and now in an indictment, with conspiracy to distribute, and possess with intent to distribute, five kilograms or more of cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. An initial appearance was held on April 8, 2004, at which time the government moved for detention under 18 U.S.C. §§ 3142(f)(1)(C) (danger to the community) and (f)(2)(A) (risk of flight). A probable cause and detention hearing was held on April 16, 2004, at which time the defendant was represented by counsel.

At the probable cause and detention hearing on April 16, 2004, the government presented its case by way of the testimony of Special Agent Christian Brackett. At the conclusion of the testimony, the defendant, through counsel, notified the court that he was challenging a finding of probable cause, but agreed to a voluntary order of deten-

tion, without prejudice to his right to seek release at a later date.  After consideration of the evidence presented, the court found that there was probable cause to conclude that the defendant is the individual named in the complaint and that he committed the crimes with which he has been charged.  A voluntary order of detention was issued.

The defendant has requested that the issue of detention be reopened, and a hearing was held on June 23, 2004, at which time the defendant was represented by counsel.  The defendant has proposed that he be released to the custody of his current girlfriend on a $20,000 secured bond, that he be permitted to work, and that he be subject to a curfew.  At the conclusion of the hearing, the court requested information about the defendant's residency status, which information was just received.  For the reasons detailed herein, this court concludes that there are no conditions which will reasonably assure the appearance of the defendant as required, and the safety of the community.  The court, therefore, orders that the defendant be detained prior to trial.

## II.  THE BAIL REFORM ACT

A.  Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained.  See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably

assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

    B.    The government is entitled to move for detention on grounds of danger to the community in a case that –

    (1)    involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

    (2)    involves an offense punishable by death or life imprisonment;

    (3)    involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; or

    (4)    involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court sua sponte may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where

---

[1] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  See United States v. Moss, 887 F.2d 33, 336-37 (1st Cir. 1989).

there is a serious risk of obstruction of justice or threats to potential witnesses.  See 18 U.S.C. § 3142(f).

  C. In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

  (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

  (b) the weight of the evidence against the accused;

  (c) the history and characteristics of the person, including --

   (i) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (ii) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

  (d) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

  D. Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

  First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the

judicial officer finds (1) that the defendant has been convicted of a federal crime of violence within the meaning of § 3156(a)(4) [or a state crime of violence within the meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g., possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.  See 18 U.S.C. § 3142(e).

     Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of

18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.  See 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight.  The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are not applicable to him for whatever reason advanced.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991).  This "only imposes a burden of production on a defendant.  The burden of persuasion remains with the government."  United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); see also United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear.  Rather, it retains some evidentiary weight, the amount of which will depend on how closely the defendant's case "resembles the congressional paradigm" and other relevant factors.  Palmer-Contreras, 835 F.2d at 17-18; Dillon, 938 F.2d at 1416.  See United States v. Jessup, 757 F.2d 378, 387 (1st Cir. 1985).

### III.  DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant."  U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited.  Based

on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the safety of the community or the defendant's presence at trial.

Since the defendant is charged with a violation of the Controlled Substances Act (21 U.S.C. § 801 et seq.) which carries a maximum sentence of ten years or more imprisonment, the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community applies. This court assumes, without deciding, that the defendant has met his burden of production in response to the presumption. Nevertheless, I find that the government has proven by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the safety of other persons and the community. I also find that the government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure that the defendant will appear.

### A. The Offense Charged And Weight Of The Evidence

The defendant is charged with a serious drug offense. He faces a maximum sentence of life imprisonment, with a mandatory minimum of 10 years imprisonment if convicted.

The government has alleged that the defendant Juan Rosario distributes kilogram quantities of cocaine and heroin, and that he obtains these drugs from the defendants Luis Castro and George Montilla, among others. There is a substantial amount of wire-tap and surveillance evidence to support the government's case.

The evidence shows that on February 26, 2004, Rosario was engaged in discussions about paying for some drugs which had been previously delivered. Criminal Complaint 04-M-1069-JGD ("Compl.") ¶ 73. The payment was to be made to Castro, but Castro gave Rosario Montilla's phone number to call when the money was available. Id. at ¶¶ 74 -75. Later that day, Montilla called Rosario, but the money was not available, and arrangements were made to speak again the next day. Id. at ¶ 75. The two men did speak at least twice the next day, and continued to discuss Rosario's attempts to collect money from others. Id. ¶ 77.

Rosario's collection and sales efforts continued. On March 5, 2004, Rosario made arrangements with the defendant Lorenzo Velasquez to sell Velasquez some drugs. Id. ¶¶ 92-96. The transaction was to take place at Jiminez Grocery. There is evidence that Montilla, driving Castro's car, went to the Grocery, apparently to drop off the drugs for Rosario to sell to Velasquez. Id. ¶¶ 96-98. Rosario and Montilla spoke on March 9, 2004. Id. ¶¶ 100-01. They spoke again on March 12, 2004 about Rosario paying Montilla after he received money from others. Id. ¶ 108. Rosario called Montilla and told him he had just received $5,000, and Montilla went to the Grocery to pick it up. Id. ¶¶ 110-11. After going to the Grocery, the vehicle in which Montilla was a passenger was stopped by police. Id. ¶ 112. He was found with $5,000 in his jacket pocket and $2,150 in his front pants pocket. Id. ¶ 112. He told the police that he had saved the money over the last two months working in construction and as a cab driver. Id. Later that day, Montilla called Rosario and told him what had happened. Id. ¶ 114. On March 13, 2004, Montilla went to the State Police Barracks in Andover,

Massachusetts seeking a return of the money. Id. ¶ 116. He claimed the money came from his godmother. Id.

On or about March 29, 2004, Montilla and Rosario had further telephone conversations about Rosario's need to pay his outstanding debt, and the drug sales in which Rosario intended to participate to obtain the money. See id. ¶¶126, 128, 131, 133. It eventually appeared that drugs were to be delivered to Rosario at the Jimenez Grocery on March 30, 2004, and Montilla was to obtain some payment from Rosario at that time. Rosario and Montilla were arrested upon Montilla's arrival at the Grocery. Id. ¶ 133. Rosario had $14,000 in cash with him. Id.

Thus, there is evidence which indicates that Montilla was a significant participant in the drug trafficking which forms the basis of the indictment.

### B.  History And Characteristics Of The Defendant

The defendant, age 38, was born on April 2, 1966 in the Dominican Republic. It is unclear from the present record when he came to the United States, but it was sometime in the mid-1990's. He is a legal permanent resident and would be subject to deportation if convicted of the crime charged.

The defendant's parents live in the Dominican Republic. The defendant has siblings living in Texas as well as the Dominican Republic.

The defendant was married in 1990 to Carlita Roble, who lives in the Dominican Republic. They have two children, age 17 and 12, who live with their mother. The couple was divorced in 2002.

From 1997 to 2003, the defendant was involved with Rosario Seballo, who also lives in the Dominican Republic. They have two children, age 8 and 5, who also live with their mother.

In 1999 the defendant had a child, age 4, with Francisca Esteves. She and her child live in the Dominican Republic.

In 2000, the defendant had a child, age 3, with Veronica Nunez who also lives in the Dominican Republic.

The defendant states that he has been dating Santa Read, a legal permanent resident in the United States, for the last 8 months. Ms. Read would be willing to have the defendant live with her if he was released.

Since coming to the United States, the defendant has lived in New York and Houston, Texas, in addition to Massachusetts.

The defendant worked as a butcher in the Dominican Republic, and has submitted evidence that he could be employed as a butcher if released. However, he has been unemployed for the past year or so. It does not appear that he has worked as a butcher in the United States. He reports that he worked in construction in Texas for several months, but left due to low pay.

The defendant reports no assets. He states that he owes people in the Dominican Republic $15,000 for a failed attempt at starting a chicken farm.

The defendant has no criminal record in the United States.

### C.  Danger To The Community

The government has met its burden of proof, by clear and convincing evidence, that there are no conditions or combination of conditions of release which will reasonably assure the safety of other persons and the community. The defendant was involved in significant drug transactions and apparently had easy access to both drugs and significant amounts of cash. He has not had any stable employment in the United States, and has no explanation for his source of funds other than money from drug-related business.

The rebuttable presumption which applies in the case of drug charges was premised, in part, on Congress' conclusion "that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep. No. 225, 98th Cong., 1st Sess. 13 (1983). Recognizing that the burden of persuasion remains with the government at all times, I find that the presumption of dangerousness has not been rebutted.

### D.  Risk Of Flight

I also find that the record evidence before this court warrants a conclusion that no condition or combination of conditions -- short of pretrial detention -- would reasonably assure the appearance of the defendant. The prospect of a significant jail sentence provides a clear and unequivocal impetus to flee, especially in light of the possibility of deportation after the sentence is served. The defendant has extensive ties to the Dominican Republic. The defendant has no financial ties to this community, and no career to keep him here. His personal ties to the United States are also tenuous. His fairly recent relationship with Ms. Read does not establish that he is likely

to remain in the United States, especially when viewed against the number of prior short-term relationships in which he has engaged. Similarly, given the large amount of cash involved in the drug trade, the proposed bond of $20,000 is insufficient to convince the court that the possibility of its loss would motivate the defendant not to flee. Under such circumstances, the risk of flight is high.

## IV.   ORDER OF DETENTION

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1) That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

        / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge