Exhibit 1

## AFFIDAVIT OF SPECIAL AGENT CHRISTIAN BRACKETT

Special Agent Christian Brackett deposes and states as follows:

## I. INTRODUCTION

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA). I have served in this capacity for over 6 years and am currently assigned to the Boston, Massachusetts Division Office. During my tenure as a Special Agent, I have worked on dozens of drug investigations. I have written and/or participated in the execution of numerous search warrants resulting in seizures, including large quantities of controlled substances: large amounts of United States Currency, ledger books, bank records, telephone books, receipts, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances. The information contained in this affidavit was either observed by me or related to me by other law enforcement officers and contract interpreters involved in this investigation.

2. I am submitting this affidavit for two reasons: 1) in support of an application for a criminal complaint, and arrest warrants, charging Juan ROSARIO; Javier TORRES-ESPINO, a/k/a Danny Parades; Pedro INFANTE, a/k/a ALEX; Luis CASTRO, a/k/a NENE; George MONTILLA, a/k/a "JOSE"; Lorenzo VELASQUEZ; Anselmo DOMINGUEZ; Luis ERAZO, a/k/a "El Menor; TUTO LNU and Hector MAGA

## AFFIDAVIT OF SPECIAL AGENT CHRISTIAN BRACKETT

Special Agent Christian Brackett deposes and states as follows:

### I. INTRODUCTION

1.    I am a Special Agent with the United States Drug Enforcement Administration (DEA). I have served in this capacity for over 6 years and am currently assigned to the Boston, Massachusetts Division Office. During my tenure as a Special Agent, I have worked on dozens of drug investigations. I have written and/or participated in the execution of numerous search warrants resulting in seizures, including large quantities of controlled substances: large amounts of United States Currency, ledger books, bank records, telephone books, receipts, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances. The information contained in this affidavit was either observed by me or related to me by other law enforcement officers and contract interpreters involved in this investigation.

2.    I am submitting this affidavit for two reasons: 1) in support of an application for a criminal complaint, and arrest warrants, charging Juan ROSARIO; Javier TORRES-ESPINO, a/k/a Danny Parades; Pedro INFANTE, a/k/a ALEX; Luis CASTRO, a/k/a NENE; George MONTILLA, a/k/a "JOSE"; Lorenzo VELASQUEZ; Anselmo DOMINGUEZ; Luis ERAZO, a/k/a "El Menor; TUTO LNU and Hector MAGA

(hereinafter referred to as "the Target Subjects") with
conspiracy to distribute and possess with intent to distribute
cocaine and heroin, in violation of Title 21, U.S.C., Sections
846 and 841(a)(1); and 2) in support of an application for the
issuance of ten (10) search warrants to be executed at the Target
Locations referred to below and as further described in
**Attachment A** (based upon the personal observations of myself or
my fellow agents).

    3.    This affidavit includes a summary of events that I am
personally familiar with as well as the observations and
knowledge related to me by other DEA agents, Haverhill Police
Officers, Massachusetts State Troopers, Nashua Police Officers
and other law enforcement personnel who have been working on this
investigation.  This affidavit does not set forth all the facts
developed during the course of this investigation.  Rather, it
sets forth only those facts that are necessary and sufficient to
establish probable cause to believe that the "Target Subjects"
have committed the aforementioned crimes described in the
attached Criminal Complaint, and that the Target Locations
contain cocaine, heroin and/or other narcotics, U.S. Currency,
documents and other records detailing the purchase of cocaine and
heroin, documents confirming travel and telephones or
communication devices used to facilitate the distribution of
narcotics or other violations of 21 U.S.C. § 846 and 841(a)(1),
as set forth in more detail in Attachment B.

5. Based on evidence provided by confidential sources, cooperating defendants, the use of a T-III intercept on Target Telephones 1 and 2, surveillance and previous investigations by DEA New York and DEA Houston, I have identified Javier TORRES-ESPINO, date of birth March 8, 1973 as the male communicating with ROSARIO over Target Telephone #1, using telephone number (917) 216-7500. According to calls, ESPINO is currently living in New York City but his actual address is unknown. Based on evidence collected to date, I believe that ESPINO has been supplying ROSARIO with both cocaine and heroin for sometime based on their references to "girls" and "guys". Over the last month, ESPINO has been communicating with ROSARIO regarding the shipment of between twenty to forty five kilograms of cocaine from people in Miami and the delivery of 6 kilograms of cocaine from a source in New Jersey.

**Luis CASTRO a/k/a NENE**

6. Based on evidence provided by a confidential source in Nashua, New Hampshire, the interception of communications over Target Telephone #1, surveillance and a previous undercover operation in Houston, Texas, I believe that Luis CASTRO, date of birth May 25, 1978, is the male communicating with ROSARIO over telephone numbers (603) 233-2112 and (809) 772-5932. According to apartment lease records, CASTRO resides at 1 Clocktower Place, apartment #114, Nashua, NH. Based on evidence collected to date, I believe that CASTRO has supplied ROSARIO with kilogram

## A. Target Individuals

**JUAN ROSARIO**

4.    Through the combined use of interceptions over Target Telephone #1, and surveillance, I have identified ROSARIO, as the primary user of Target Telephone #1 and Target Telephone #2.[1] Through surveillance and conversations over Target Telephone #1, I have determined that ROSARIO resides at 81 Blaisdell Street, Apartment #1, Haverhill, Massachusetts. At this time, however, I have been unable to obtain ROSARIO's date of birth and therefore have not determined whether he has a driver's license or criminal history. Evidence collected to date indicates that ROSARIO distributes cocaine and heroin to various  customers in the Lawrence and Haverhill, MA area, including VELASQUEZ, INFANTE, DOMINGUEZ, MAGA and a male referred to as "FREDDY", which he receives from Javier TORRES-ESPINO, CASTRO and  George MONTILLA, a/k/a "JOSE," among others. Calls further indicate that VELASQUEZ has also supplied ROSARIO with narcotics on at least one occasion. Based on my interpretation of the coded conversations, it appears that ROSARIO receives multiple kilogram quantities of cocaine and significant quantities of heroin.

**Javier TORRES-ESPINO, a/k/a Danny PARADES**

---

[1] Target Telephone 1 is (917) 912-9106, an AT&T wireless telephone subscribed to Angela Lopez, 560 West, 175th Street, New York, N.Y. Target Telephone 2 is (917) 349-3096, a T-Mobile telephone with no subscriber name.

quantities of cocaine. Pursuant to intercepted conversations, I have learned that during the end of February and beginning of March 2004, when CASTRO was in the Dominican Republic, he gave ROSARIO the telephone number of an associate named JOSE and instructed ROSARIO to contact JOSE to do business while CASTRO was out of the country. Since that time, JOSE has delivered at least one kilogram of cocaine to ROSARIO on March 5, 2004, which ROSARIO in turn sold to Lorenzo VELASQUEZ for $24,500. I have also learned that CASTRO is a close associate of ESPINO in the drug distribution business. In December 2003, CASTRO was temporarily detained with ESPINO by DEA agents in Houston, Texas, after ESPINO attempted to purchase forty kilograms of cocaine from two DEA undercover agents. As a result of the stop, DEA agents in Houston, Texas seized approximately $65,000. ESPINO and CASTRO were not arrested at that time.

**George MONTILLA, a/k/a JOSE**

7.   Based on intercepted calls, surveillance and a traffic stop on March 12, 2004 by the Massachusetts State Police, I have identified George MONTILLA, date of birth April 23, 1966, as the male referred to as "JOSE" using telephone number (603) 233-3282, a T-Mobile prepaid telephone subscribed to Antonio BANDERAS (no address given) and (917) 549-1659, subscribed to SANTA REED, 22 Hilltop Street, 2nd Floor, Lawrence, MA. Based on intercepted calls, surveillance and the subscriber records for (917) 549-1659, agents have identified MONTILLA's residence as 22 Hill Top

Street, 2nd Floor, Lawrence, MA.    Intercepted calls and
corresponding surveillance indicates that MONTILLA  is a close
associate of Luis CASTRO.  On March 5, 2004, conversations
intercepted over Target Telephone #1 and corresponding
surveillance indicated that JOSE delivered a kilogram of cocaine
to ROSARIO at JIMENEZ GROCERY, which ROSARIO then supplied to
LORENZO VELASQUEZ.

**LORENZO VELASQUEZ**

8.    Based on calls intercepted over Target Telephone #1 and
corresponding surveillance, I have identified LORENZO R.
VELASQUEZ, date of birth August 3, 1963, as the male who is
referred to in intercepted calls as "LORENZO" and "RAMON", using
telephone number (978) 390-4643, which is subscribed to LORENZO
VELASQUEZ, 429 Broadway, Methuen, MA.  Through surveillance of
VELASQUEZ, agents have determined that he currently resides at
187-189 Sanborn Street, Lawrence, MA.  Based on evidence
collected to date, I believe that VELASQUEZ is both a cocaine
customer and supplier of ROSARIO.

**Pedro INFANTE a/k/a ALEX**

9.    Based on calls intercepted over Target Telephone #1 and
corresponding surveillance, I have identified Pedro A. INFANTE,
date of birth September 8, 1970, as the male whom ROSARIO refers
to as ALEX and who communicates with ROSARIO over (508) 726-0667
and (508) 726-4814.  Surveillance has established that INFANTE
has two residences, 12 Dover Street, Haverhill, MA and 62 Jackson

Street, Haverhill, MA, which I believe, based on surveillance and intercepted calls, he uses to stash narcotics and drug proceeds. Based on evidence collected to date, I believe that INFANTE is a close associate of ROSARIO and works under ROSARIO distributing cocaine and heroin.

**Anselmo DOMINGUEZ**

10.    Based on calls intercepted over Target Telephone #1 and corresponding surveillance, I have identified Anselmo DOMINGUEZ, date of birth July 8, 1968, as the male referred to as "Anselmo" using telephone number (978) 853-8628, subscribed to Anselmo DOMINGUEZ, 82 Temple Street, Haverhill, MA.  Surveillance of meetings between ROSARIO and DOMINGUEZ confirmed that DOMINGUEZ currently lives at 82 Temple Street, Haverhill, MA.  Based on evidence collected to date, I believe that DOMINGUEZ is a narcotics customer of ROSARIO.

**Hector MAGA**

11.    Based on calls intercepted over Target Telephone #1 and corresponding surveillance, agents have identified Hector MAGA, date of birth February 11, 1940, as the male referred to as "Hector" using telephone number (617) 427-4310, subscribed to Walter Banks, 1855 Washington Street #5J, Roxbury, MA.  According to MAGA's Massachusetts Driver's License and surveillance of ROSARIO to 1855 Washington Street, I believe that MAGA currently resides at that address.  Based on evidence collected to date, I believe that MAGA is a narcotics customer of ROSARIO.

**LUIS ERAZO**

12.  Based on calls intercepted over Target Telephone #1 and corresponding surveillance, agents have identified a male whom I believe to be Luis ERAZO, who works for ROSARIO and INFANTE distributing drugs and collecting drug proceeds.

**TUTO**

13.  Based on calls intercepted over Target Telephone #1 and corresponding surveillance, agents have identified and taken a photograph of a male whom I believe to be the individual referred to as "TUTO," using telephone number (978) 682-6409 and (978)390-3841.  Telephone number (978) 682-6409 is a residential telephone subscribed to Jose GARABITO, 73 East Haverhill Street, Lawrence, MA.  I believe that TUTO resides at 73 East Haverhill Street, #2, Lawrence, MA, based on surveillance of TUTO entering and exiting that address, along with the fact that he uses the residential telephone installed there.  Based on evidence collected to date, I believe that TUTO is both a narcotics customer of ROSARIO and also a supplier of heroin, marijuana and pharmaceutical pain killer drugs.

**TARGET LOCATIONS**

**81 Blaisdell Street, 1st Floor, Haverhill, MA**

14.  Through surveillance, intercepted conversations and information provided by a confidential source, agents have identified 81 Blaisdell Street, 1st Floor, Haverhill, MA as the

residence of ROSARIO.  According to NSTAR, the electric service
at 81 Blaisdell Street, 1st Floor is subscribed in the name of
Isa Delores JIMENEZ, who has been identified as ROSARIO's
girlfriend.  I believe that ROSARIO has a concealed compartment
inside this address, which he has used to stash drugs, based on
information provided by a confidential source referred to as CI-1
in the initial T-III affidavit and telephone calls on February
26, 2004, where ROSARIO states that someone broke into his
residence, found the "hollow" and stole his "stash".  While it is
unclear whether ROSARIO is currently storing drugs at the
location since the break-in, I believe the secret compartment is
still there and we wish to photograph it.  I also believe that
ROSARIO maintains drug proceeds and documents and other items
constituting evidence of the conspiracy at that location.
Although the government relies upon the entire affidavit, the
evidence most directly supporting probable cause for the issuance
of a search warrant at this location is set forth at paragraphs
25, 53-54 and 76.

**12 Dover Street, Haverhill, MA**

15.  Agents have identified 12 Dover Street, Haverhill, MA
as one of two residential addresses used by INFANTE, which he and
ROSARIO refer to as "the old" in intercepted conversations.
According to NStar Electric, Alex INFANTE is the subscriber to
the electricity at 12 Dover Street, Haverhill, MA.  Although
INFANTE does not appear to live at this address any longer, and

it appears to be unoccupied, I believe that ROSARIO and INFANTE store drugs and drug proceeds at this location based on numerous calls where they refer to bringing "tickets" and "women" to the location and surveillance of ROSARIO and INFANTE going to that location in response to calls from customers. Although the government relies upon the entire affidavit, the evidence most directly supporting probable cause for the issuance of a search warrant at this location is set forth at paragraphs 35-40, 43, 69-72.

**62 Jackson Street, 1st Floor, Haverhill, MA**

16.    Agents have identified 62 Jackson Street, 1st Floor Haverhill, MA as one of two residential addresses used by INFANTE, which he and ROSARIO refer to as "the new" in intercepted conversations.  According to Verizon, New England Telephone, the residential telephone at that location is subscribed to Jennifer Boudreau, the same name as the registration on INFANTE's blue BMW.  Based on surveillance, INFANTE appears to currently live at this address.  I believe that ROSARIO and INFANTE store drugs and drug proceeds at this location based on numerous calls where they refer to bringing "chelitos," Spanish slang for change or money and, for example, "100 pesos" to the location, and surveillance of ROSARIO and INFANTE going to that location in response to calls from customers. Although the government relies upon the entire affidavit, the evidence most directly supporting probable cause

for the issuance of a search warrant at this location is set
forth at paragraphs 35-36, 53-54, 68 and 69-72.

**JIMENEZ Grocery, 112 Parker Street, Lawrence, MA**

17.   Agents have identified 112 Parker Street, Lawrence, MA
as a business owned by ROSARIO and his girlfriend Isa Delores
JIMENEZ.  According to corporation records, the business was
incorporated under the name Isa Delores JIMENEZ.  Surveillance,
in combination with intercepted calls, indicates that ROSARIO's
customers meet him at the business to drop off and/or collect
drugs and drug proceeds. Although the government relies upon the
entire affidavit, the evidence most directly supporting probable
cause for the issuance of a search warrant at this location is
set forth at paragraphs 45-52, 55-57, 59, 63-65, 77-86, 92-103
and 106-116.

**63 Brook Street, 3rd Floor, Lawrence, MA**

18.   I believe TUTO resides at 63 Brook Street, 3rd floor,
Lawrence, MA, based on several intercepted calls and surveillance
of him entering and exiting that address. He recently moved from
73 East Haverhill Street #2A, Lawrence, MA, where he was
surveilled entering and exiting to meet with ROSARIO after they
engaged in drug related conversations. I believe TUTO stashed
drugs and drug proceeds at his old address and stashes drugs at
his current address.  Indeed, he was intercepted stating, in
veiled terms, that his current address was a safer place to store
drugs.  Although the government relies upon the entire affidavit,

the evidence most directly supporting probable cause for the issuance of a search warrant at this location is set forth at paragraphs 64-65, 79-86, 105-117.

**139 How Street, #204, Haverhill, MA**

19.    Agents have intercepted a male referred to as "FREDDY" over telephone number (978)521-6971, a residential telephone subscribed to Jose THEN and installed at 139 How Street, #204, Haverhill, MA. I believe that "FREDDY" stashes drugs and/or related currency at 139 How Street #204, Haverhill, MA, based on surveillance of ROSARIO to that address, after coded conversations where ROSARIO agrees to drop off narcotics and/or pick up drug proceeds from "FREDDY". During one conversation, following a surveillance of ROSARIO to that location, FREDDY asked ROSARIO if he could bring him another "melon". According to NStar, the subscriber for the electricity at 139 How Street, #204, Haverhill, MA is also JOSE THEN. Although the government relies upon the entire affidavit, the evidence most directly supporting probable cause for the issuance of a search warrant at this location is set forth at paragraphs 69-72.

**82 Temple Street, Haverhill, MA**

20.    Agents have identified 82 Temple Street, Haverhill, MA as a residential address used by Anselmo DOMINGUEZ. According to NStar, electricity at 82 Temple Street, Lawrence, MA is subscribed to Mirope DOMINGUEZ. I believe that DOMINGUEZ stores drug related proceeds at that address based on surveillance of

ROSARIO to that address after he and DOMINGUEZ discuss collecting
drug proceeds that ROSARIO wants to pick up. Although the
government relies upon the entire affidavit, the evidence most
directly supporting probable cause for the issuance of a search
warrant at this location is set forth at paragraphs 58, 66-67,
87-88.

**1855 Washington Street, #5J, Roxbury, MA**

21.    Agents have identified 1855 Washington Street #5J,
Roxbury, MA as a residential address used by Hector MAGA.  MAGA
uses the residential telephone number (617)427-4310, which is
subscribed to Walter BANKS and installed at 1855 Washington
Street, #5J, Roxbury, MA to call ROSARIO over Target Telephone 1.
I believe that MAGA stashes drug proceeds at that address based
on a surveillance of ROSARIO to that address for the purpose of
collecting drug proceeds.   Although the government relies upon
the entire affidavit, the evidence most directly supporting
probable cause for the issuance of a search warrant at this
location is set forth at paragraphs 45-52, 59,78.

**22 Hill Top Street, Lawrence, MA**

22.    I believe that the person currently identified as
George MONTILLA, a/k/a JOSE, resides at 22 Hill Top Street, Floor
#2, Lawrence, MA, based on intercepted calls from JOSE using a
telephone subscribed to that address and surveillance of JOSE to
that location and surveillance of vehicles he uses in the
driveway of that address.  I believe that JOSE stashes drugs and

drug proceeds at that address based on surveillance of JOSE to that location after engaging in drug related conversations with ROSARIO and meetings with ROSARIO at JIMENEZ GROCERY. Although the government relies upon the entire affidavit, the evidence most directly supporting probable cause for the issuance of a search warrant at this location is set forth at paragraphs 74-75, 77, 92-98 and 103.

**1 Clocktower Place, Apartment 114, Nashua, NH**

23.  I believe that Luis CASTRO resides at 1 Clocktower Place, Nashua, NH, Apartment 114, based on apartment lease records, New Hampshire registry records and surveillance of CASTRO to that location.  I believe that CASTRO stores drug proceeds at that location based on a surveillance on March 14, 2004, where agents followed CASTRO to that location after picking up drug proceeds from ROSARIO. Although the government relies upon the entire affidavit, the evidence most directly supporting probable cause for the issuance of a search warrant at this location is set forth at paragraphs 60-62 and 118-122.

**SOURCES OF PROBABLE CAUSE**

**Introduction and Background**

24.  During the fall and winter of 2003, DEA agents in New York, NY conducted an investigation into the narcotics trafficking activities of Luz Rivera Mejia (the "New York Investigation").  That investigation resulted in the arrest of MEJIA and the seizure of approximately 2.8 kilograms of heroin

that she delivered to an undercover DEA agent.  Based upon calls
lawfully intercepted during the New York Investigation,
information provided by confidential sources, cooperating
witnesses and telephone analysis, ROSARIO was identified as a
significant narcotics customer of MEJIA and ESPINO, who was also
intercepted during the MEJIA investigation.

25.  For example, in November 2003, a confidential source
(hereinafter referred to as CI-1) provided information to agents
in Boston, Massachusetts regarding a male known as Juan ROSARIO,
who resides at 81 Blaisdell Street, Haverhill, MA.  CI-1 is
attempting to cooperate in the hope that its cooperation will
result in a reduction in the sentence of a relative facing
federal drug trafficking charges. CI-1 has no prior arrest
record. CI-1 informed agents that its friend, whom CI-1 declined
to identify, worked distributing drugs for ROSARIO.  The friend
advised CI-1 that ROSARIO distributes kilogram quantities of
cocaine and heroin, which ROSARIO receives from a source in
Connecticut unknown to CI-1.  CI-1 also learned from its friend
that ROSARIO recently had a concealed compartment installed
inside his residence at 81 Blaisdell Street, which he uses to
store the drugs.  CI-1 also learned from its friend that ROSARIO
has a male distributing narcotics for him named ALEX, who resides
at 12 Dover Street, Haverhill, MA.[2]  CI-1's friend also advised

---

[2]  Pen register records for the "TARGET TELEPHONE" indicate
numerous calls to a telephone subscribed to 14 Dover Street,
Haverhill, MA.  Business records and surveillance indicate that

CI-1 that ALEX also sells ecstasy, which may also be supplied by ROSARIO. According to CI-1's friend, ROSARIO is wanted on a murder charge in New York and is currently using a name other than ROSARIO. CI-1, however, did not know the name that ROSARIO was using. CI-1 has never personally met ROSARIO. To date, CI-1's information has not led to the seizure of drugs or arrests of any individuals. Some of CI-1's information has been corroborated through the New York wiretap investigation and evidence collected during this investigation. To my knowledge, CI-1 has not provided information that has been determined by agents to be false or misleading. CI-1 has been reluctant to cooperate fully and is not willing to testify.

26. Another cooperating witness, CW-1, worked, from August to December 2003, as a driver for LUZ MEJIA in New York. CW-1 is cooperating in exchange for money. CW-1 has admitted to being a drug dealer in the past. To date, CW-1's cooperation has led to the seizure of 2.8 kilograms of heroin and the arrest of MEJIA. CW-1 provided information to DEA agents in New York that "DANNY" is a multi-kilogram cocaine and heroin customer of MEJIA and other members of this organization. Agents in New York stopped "DANNY" after he was surveilled meeting with MEJIA; when asked for identification, he produced a Massachusetts driver's license in the name of JAVIER TORRES-ESPINO, 81 Blaisdell Street,

the #14 Dover Street is a subdivided apartment located within the dwelling at 12 Dover Street. I believe ALEX is residing at 14 Dover Street.

Haverhill, MA (ROSARIO's residence).  Through conversations

overheard between MEJIA and DANNY, CW-1 learned that DANNY has a

significant drug customer in Massachusetts named "JUAN".[3]  CW-1,

however, has never met JUAN.  CW-1's information has been

corroborated in many respects through investigation by agents.

CW-1 has not provided information that has been determined by

agents to be false or misleading and CW-1 is considered reliable

in that its information has been corroborated by intercepted

conversations over the New York wiretaps, consensual recordings

between CW-1, ESPINO and MEJIA, as well as by surveillance of

meetings between CW-1, MEJIA and ESPINO.  CW-1 had been a drug

dealer in the 1990's in the New York area.

   27.  In December 2004, shortly after MEJIA's arrest, ESPINO,

CASTRO and three other males were detained in Houston, Texas,

after negotiating with two DEA undercover agents to purchase 40

kilograms of cocaine.  When ESPINO was stopped, agents found

$59,635.00 in United States currency in a vehicle, in which he

was an occupant.  Agents seized the currency but ESPINO and

CASTRO were released without being charged.  During the days that

ESPINO and CASTRO were in Texas negotiating with the DEA

---

4    Pen registers in Connecticut in November and early December
2003 indicated over 100 calls between ESPINO's telephone and the
predecessor to the "TARGET TELEPHONE".  Conversations intercepted
in New York revealed that the predecessor to the "TARGET
TELEPHONE" was used by an associate of "DANNY" named "JUAN".
Cell site information for the predecessor to the TARGET TELEPHONE
showed that it was roaming a majority of the time in Haverhill,
MA.

undercover agents, a pen register on one of ROSARIO's telephones indicated several calls to the wireless telephone that ESPINO had on his person when arrested.    Based on the evidence described above, along with information obtained from several confidential informants, an affidavit was submitted in support of a T-III intercept on ROSARIO's wireless telephone.

28.  On February 12, 2004, United States District Court Judge Mark Wolf signed an order authorizing the interception of communications over the wireless telephone used by ROSARIO, Target Telephone #1.  Monitoring of Target Telephone #1 began on February 13, 2004.  On March 12, 2004, United States District Court Judge Nancy Gertner signed an order authorizing the continued interception of communications over Target Telephone #1 and the initial interception of communications over a second wireless telephone used by ROSARIO, (917) 349-3096, a T-Mobile telephone with no subscriber information (Target Telephone #2). Monitoring of Target Telephone #2 began on March 13, 2004.

29.  Since monitoring of Target Telephone #1 began on February 13, 2004, I have determined that ROSARIO obtains and/or has been attempting to obtain what I believe are kilogram quantities of cocaine and significant amounts of heroin from numerous sources, both locally and in the New York area, including ESPINO, CASTRO and MONTILLA.[4]  I have also determined

---

[4] Numerous calls over Target Telephones 1 and 2 evidence the Target Subjects ongoing but at times unsuccessful efforts to obtain drugs because of money problems they were having and what appears to be a period when the area is unusually "dry"

that ROSARIO has a significant customer base in the Lawrence and Haverhill, MA areas, including INFANTE, VELASQUEZ, TUTO, MAGA, DOMINGUEZ, ERAZO and a male referred to as "FREDDY". Although ROSARIO and his co-conspirators typically speak in coded conversation over Target Telephones 1 and 2, I believe, based on my training and experience, my debriefing of various CWs and CIs in this case, and surveillances, that their frequent references to transporting and/or purchasing or selling "girls", "guys" and "shirts" are references to the distribution of cocaine and heroin, and their frequent references to picking up or dropping off "tickets", "chelitos" and "pesos" to pay for the "girls" and "guys" are references to drug proceeds. I believe they also alternatively use the term "pesos" to refer to a quantity of drugs, probably grams.

30. The following section describes certain conversations intercepted over Target Telephone #1 and Target Telephone #2, between ROSARIO and others concerning the distribution of narcotics and the collection of drug proceeds, along with related surveillance in response to the calls.

31. To the extent that portions of conversations have been attributed to individuals other than ROSARIO, those identifications have been made either through the interceptee's identification of himself or herself by name during the course of the conversation, available subscriber information and/or voice comparisons by contract monitors working under the direction of

agents.  The intercepted conversation are virtually all in
Spanish and I have relied upon trained, experienced Spanish-
speaking monitors to translate the calls from Spanish to English.

32.  I have not summarized every pertinent intercepted call,
nor have I included every pertinent part of the call that I have
summarized.  Furthermore, any transcriptions of intercepted calls
are preliminary and in draft form.  As such, the summaries set
forth in this affidavit are preliminary in nature.  My opinions
concerning the meaning of coded or veiled conversations are based
on my training and expertise developed as a result of
investigating the distribution of controlled substances.

**February 14, 2004 - <u>Forty-Five Kilogram Shipment</u>**

**ESPINO, ROSARIO, CASTRO**

33.  On February 14, 2004, at approximately 10:01 p.m.,
ROSARIO placed a call from Target Telephone #1 to ESPINO at (917)
216-7500.  ESPINO told ROSARIO that he had been talking to a male
referred to as LUIS and had told him to "take good care of you. I
told him to give you two, three or four." ROSARIO replied: "Man!"
ESPINO said  he had told him "a long time ago to  give you five
or four." ROSARIO also said  that  "he" said he was going to "go
down there." ROSARIO replied: "he's a  coward. I don't know."
After they both suggested sending someone else to go "up there"
and "through there," ESPINO said: "No, no, I'm going to talk to
them. But supposedly forty-five people are coming. Does he know?"
ROSARIO replied: "I'm not going to tell him that."  ESPINO said:

"Only you and I know that.  Not even Rubito that's next to me knows that those people are coming. Nobody." ROSARIO replied: "Exactly." ESPINO added: "You and I and (unintelligible) friend that has ten pesos are the only ones involved in the deal. No one else has to know. Only you and I. No one else has put in anything." ESPINO added: "I'll have victory in my hands!" He also made a reference to the money he had lost, which I believe was a reference to the $59,635 seized from ESPINO in Texas in December 2003 when he attempted to obtain forty kilograms of cocaine. ESPINO concluded by saying: "No, I'll just send you twenty guys for right now and then in a month I'll send more guys. More than that. You understand?" ROSARIO  replied: "Yes.  I can get comfortable."

34.  I believe that ESPINO was advising ROSARIO that forty-five kilograms of cocaine were arriving and that he was going to send ROSARIO twenty kilograms.  Following this series of calls, I called down to the DEA case agents in Houston and learned that a reliable CI there who had brokered the prior attempted controlled delivery of forty kilograms of cocaine to ESPINO was, in fact, in the process of negotiating with several individuals from Miami who were planning to arrive to pick up twenty kilograms of cocaine that was part of a larger shipment sent by a source in Colombia.  The CI understood that the Miami people were going to send the shipment up north.  Based on the intercepted conversations, I believe that ESPINO and ROSARIO are the intended

recipients of these twenty kilograms of cocaine. As discussed in
more detail below, I further believe that the reference to Luis
may be to Luis CASTRO, who was with ESPINO when he was stopped
in Texas in December 2003, and that ESPINO was advising ROSARIO
that he had told Luis to give ROSARIO three or four kilograms of
cocaine. From February 13, 2004, to the present, we have
intercepted numerous calls between ROSARIO and ESPINO discussing
the arrival of what I believe to be between 20 and 45 kilograms
of cocaine in Texas, ESPINO and ROSARIO's efforts to raise money
to fund this shipment and their arrangements for sending one or
more couriers down to pay for, pick up and/or transport these
drugs back to Massachusetts.

**February 15, 2004**

**ROSARIO, INFANTE, 12 Dover Street, Haverhill, MA, 62 Jackson
Street, Haverhill, MA**

    35.  On February 15, 2004, at approximately 4:31 p.m.,
ROSARIO  placed a call over Target Telephone #1 to "ALEX",
subsequently identified as Pedro INFANTE at (508)726-4814.
INFANTE told ROSARIO that: "that guy is going to come by here and
leave the 'shirt' (a reference, I believe, to a quantity of
drugs) so that it can be taken to that man." ROSARIO said: "Yes,
yes." Minutes later, ROSARIO called INFANTE again over Target
Telephone #1 and told him to "bring the shirt to take it to the
man." He asked INFANTE where he was and INFANTE replied: "I'm
still here by the new." ROSARIO replied: "well put aside you know

what." He added that he would be by in awhile. Based on surveillance, I believe that INFANTE's reference to being at the "new" was a reference to 62 Jackson Street where ROSARIO and INFANTE may be storing drugs. In a later call from ROSARIO to INFANTE over Target Telephone #1, ROSARIO said: "I'm going to pick up some tickets (a reference I believe to either drugs or drug proceeds). Do you want to go to twelve?" INFANTE said yes. ROSARIO added: "Yeah, the woman called me so go to twelve." (a reference, I believe, to another residence used by INFANTE located at 12 Dover Street, Haverhill, MA).

36. Shortly thereafter these calls, agents responded to the vicinity of 12 Dover Street, Haverhill, MA and observed a white Oldsmobile used by ROSARIO and registered to Isa DELORES JIMENEZ, 81 Blaisdell Street, Haverhill, MA, parked in front of the residence. Shortly after, agents observed INFANTE and a male identified as Luis ERAZO arrive in a blue BMW and walk towards the front entrance of 12 Dover Street.

**February 16, 2004**

**ROSARIO and INFANTE**

37. On February 16, 2004, at 9:45 a.m., ROSARIO placed a call over Target Telephone #1 to ALEX at (508) 726-4814 and asked him what he did the previous night. ALEX replied that : "Joe called late, it was like 10:30 and wasn't going to go to the street with that." (A reference, I believe, to not wanting to deliver drugs at that time of night). ROSARIO said: "Well try it then." ALEX said

he would try and would call ROSARIO back. Several minutes later, ROSARIO received an incoming call from ALEX who said: "Yeah, they are home. They are down there, both of them." ALEX and ROSARIO then engaged in a short discussion regarding who should meet with the men. Minutes later, ALEX called ROSARIO back at Target Telephone #1 and told him: "They already left to take the little girl. If you want to go up and come down together to look for the plate." ROSARIO agreed to this plan. I believe ALEX and ROSARIO were discussing the logistics for transferring drugs (the "little girl") to one or more of their customers.

**ROSARIO, CASTRO, INFANTE**

38.   On February 16, 2004, at 2:13 p.m., ROSARIO received a call over Target Telephone #1 from CASTRO, using telephone number (603) 233-2112.  CASTRO asked ROSARIO what happened to his other telephone (a reference, I believe to Target Telephone #2) and complained that ROSARIO, "left those people hanging with that." ROSARIO said he would call this guy today and get back to CASTRO. Shortly thereafter, ROSARIO received an incoming call over Target Telephone #1 from INFANTE. ROSARIO told him: "I was just talking to this guy. The one with the shirt (a reference, I believe, to a kilogram of cocaine). I haven't talked to these people. One cannot be telling them one thing for another. One cannot be taking shit to be losing money. Whenever we need it, we call him. Once we get the work we are responsible for it." ROSARIO added: "I'm not going to be walking with that up and down. If one

doesn't need it, it is better not to take it . . .."

39.  I believe that CASTRO was calling to discuss a quantity of drugs that he supplied to ROSARIO that INFANTE was in the process of selling.  I believe ROSARIO was expressing his concern about being responsible for paying CASTRO for drugs they had not either been able to sell or collect payment for from one of their customers.

40.  Later that day, at approximately 5:33 p.m., ROSARIO received another incoming call over Target Telephone #1 from CASTRO, who told ROSARIO:  "What's happening is that they're just waiting on those tickets in order to leave."  After ROSARIO asked: "(U/I) go over there?"  CASTRO responded: "That's why I like to check and see who I'm dealing with. What I don't like doing is handing over something and then having to go look for it again later."  I believe CASTRO was telling ROSARIO some associates were waiting for money (tickets) in payment for drugs CASTRO had supplied to ROSARIO.

**ROSARIO and ESPINO**

41.  At 7:29 p.m., ROSARIO received an incoming call over Target Telephone #1 from ESPINO, who told ROSARIO: "I need to find those twelve pesos so that I can take it to those people I was talking to the guy there." ROSARIO asked what happened to the guy and ESPINO explained: "No, well, he stopped in Miami (U/I) they haven't called him yet. I'm waiting for him to call me. He's down there. He's not up here." ROSARIO asked: "So the

supposedly the 'guys' are here?" ESPINO replied: "Not the guys, the girls are the ones who arrived." ESPINO went on to explain that he had not given out his number to certain people yet. I believe ESPINO was asking ROSARIO for money ("twelve pesos," possibly $12,000) to pay a drug debt.

42. I further believe that ROSARIO and ESPINO were further discussing the twenty kilogram cocaine deal that the Texas CI was expecting to offer to some people from Miami. I further believe that ESPINO and ROSARIO's use of the terms "girls, not guys" is a coded means of distinguishing between cocaine and heroin.

**February 17, 2004**

**ROSARIO, INFANTE, ERAZO**

43. On February 17, 2004, at 1:44 p.m., ROSARIO placed a call from Target Telephone #1 to INFANTE and another male named Luis ERAZO, who is often referred to in intercepted conversations as "El Menor." ERAZO joked with ROSARIO: "there are people hearing you through speakers and they know who you are" and ROSARIO asked to speak with someone who was "serious". INFANTE got on the telephone and ROSARIO asked: "what did your friend say about the girl, did he like her?" INFANTE responded: "he hasn't called me yet" and ROSARIO told INFANTE that he was "waiting to see if I make 50 pesos with that or maybe one." I believe that ROSARIO was checking the quality of the drugs that he supplied to INFANTE in order to determine whether he wanted to purchase more drugs and make more money, "50 to 100 pesos".

**DOMINGUEZ, ROSARIO**

44. At 2:40 p.m., ROSARIO called DOMINGUEZ over Target
Telephone #1 and DOMINGUEZ asked ROSARIO: "How much are you
getting plantains for?" Upon being told "they're at fourteen,"
DOMINGUEZ replied "Yeah, they're expensive." ROSARIO asked
DOMINGUEZ if he could "get me eight pesos, nine, whatever you
think, so, next day" (a reference, I believe, to $8,000 or
$9,000). DOMINGUEZ told ROSARIO he would call him back. I
believe the reference to "plantains" was to drugs.

**February 17, 2004 and February 18, 2004**

**ROSARIO, VELASQUEZ, MAGA, 1855 Washington Street, #5J, Roxbury,
MA and JIMENEZ GROCERY**

45. On February 17, 2004 and February 18, 2004, ROSARIO,
MAGA and VELASQUEZ engaged in a series of telephone calls
regarding the collection of drug proceeds owed by MAGA. During
the conversations on February 18, 2004, ROSARIO also asked
VELASQUEZ for 200 "chelitos" which I believe was 200 grams of
some drug, which VELASQUEZ delivered to ROSARIO at JIMENEZ
GROCERY. ROSARIO then supplied the 200 grams to a male referred
to as "PATRON".

46. At 1:56 p.m., ROSARIO received an incoming call from
VELASQUEZ who stated, I just talked to this guy, but he is in
Boston doing some errands (a reference, I believe to Hector
MAGA). He will call later on." ROSARIO then told VELASQUEZ that

he was going to "go at five, where my friend is, the one I told you about."

47.   Later that day, at 4:56 p.m., agents were conducting surveillance in the vicinity of JIMENEZ GROCERY and observed ROSARIO exit the grocery store and drive to MAGA's residence at 1855 Washington Street, Roxbury, MA, in his white Oldsmobile, MA Reg. 93ZF29.  After arriving at the location, agents observed ROSARIO walk to the front of 1855 Washington St. and ring the buzzers to the building.  Moments later, ROSARIO returned to the Oldsmobile and sat inside the vehicle as though he was waiting for someone.  Over the next hour, agents observed ROSARIO walk up to the foyer of the building several times.  On one occasion, agents observed ROSARIO bending over using his leg to write something on a piece of paper.  While waiting, ROSARIO received a call from VELASQUEZ and told VELASQUEZ, "I've been waiting for an hour in Boston."  VELASQUEZ stated, "that bastard's late in getting there and ROSARIO stated, "I've been here since five."  About 7:11 p.m., agents observed ROSARIO drive away.

48.   Later that night, at 8:44 p.m., ROSARIO received another incoming call from VELASQUEZ.  ROSARIO told VELASQUEZ he left a message on the door.  VELASQUEZ then asked ROSARIO whether he could, "have the tickets ready for tomorrow."  ROSARIO responded: "Yeah, because that person is you know what."  VELASQUEZ assured ROSARIO: "I'm sure the guy will call me tomorrow" (referring to MAGA) and ROSARIO told VELASQUEZ, "if

anything, if that happens to work out, you go ahead and get it."

49. At 4:27 p.m., on February 18, 2004, ROSARIO received an incoming call from MAGA over Target Telephone #1. MAGA told ROSARIO that he was sick for three days and had received ROSARIO's note at 5:00 that morning. MAGA ensured ROSARIO, "I will have all of your money for you by this weekend, so there won't be any problems." MAGA then told ROSARIO: "It's very important that you and I talk in person." ROSARIO told MAGA: "I thought you were sick, next time call me."

50. During a call between ROSARIO and PATRON, PATRON asked "can you get me 200 chelitos temporarily?" ROSARIO replied: "the address is the problem." PATRON asked: "How much?" and ROSARIO replied: "twenty-six, let me try the other person and see if he'll leave it to me at twenty-five" PATRON asked: "Find out and that way I can give you the chelitos." I believe PATRON was asking ROSARIO to obtain 200 grams of cocaine, and that ROSARIO was advising him that one person was charging "26,000" per kilogram, but he was going to see if he could purchase it from someone else for $25,000.

51. At 6:25 p.m., ROSARIO placed a call to VELASQUEZ and told him: "I'm calling you because I got in touch with our guy. He was sick and at another house." ROSARIO then asked VELASQUEZ, ". . .I'm also calling you to tell you that there's a person that wants '200 pesos' and wants to know if you can do it for less

than twenty-five and a half?" VELASQUEZ said he could not.
ROSARIO said he would call his guy and get back to VELASQUEZ.
ROSARIO then called PATRON and explained that he was having
difficulty with someone but had found another guy offering to
sell to them for "26." PATRON agreed to this price. ROSARIO
then called VELASQUEZ back and asked him to come by "with 200
pesos."

52. About 45 minutes later, agents conducting surveillance
in the vicinity of JIMENEZ GROCERY observed a Honda Accord
registered to LORENZO VELASQUEZ arrive and park outside the
store. Agents then observed the male exit the vehicle and enter
the store. Because it was dark out, agents could not positively
identify the male due to the limited light. About two minutes
later, agents observed the same male exit the store and depart in
the Honda (we have since seen VELASQUEZ driving the same Honda
Accord). I believe that VELASQUEZ was dropping off drugs at
JIMENEZ grocery which ROSARIO was going to sell to PATRON.

**February 19, 2004**

**INFANTE, ROSARIO, 81 Blaisdell Street, Haverhill, MA and 62
Jackson Street #1, Haverhill, MA**

53. At approximately 5:56 p.m., ROSARIO placed a call to
INFANTE at (508) 726-4814. INFANTE told ROSARIO to stop at
ROSARIO's house and bring him some "chelitos,"(a reference, I
believe to either drugs or money) and for ROSARIO to meet him at
the "new".

54.   Shortly thereafter, at 6:05 p.m., agents observed
ROSARIO drive in his white Oldsmobile from Jimenez Grocery to  81
Blaisdell St.    Agents observed ROSARIO exit the car and enter
the residence.  At approximately 6:27 p.m., agents observed
ROSARIO enter the Oldsmobile and travel to 62 Jackson Street,
Haverhill, MA.  A little over an hour later, at 7:36 p.m., agents
observed ROSARIO depart 62 Jackson Street in the Oldsmobile.   I
believe that ROSARIO stopped at 81 Blaisdell Street to pick up
either drugs or money, which he delivered to INFANTE at the
location they refer to in coded terms as "the new", 62 Jackson
Street #1, Haverhill, MA.

**February 20, 2004**

**VELASQUEZ, ROSARIO, JIMENEZ GROCERY**

55.   On February 20, 2004, ROSARIO received an incoming call
from JIMENEZ using (978)681-5394, the hard line telephone at
JIMENEZ GROCERY.   JIMENEZ told ROSARIO that "PATRON" came over
and left "one hundred pesos".   I believe this was payment for the
200 grams of an unknown drug that ROSARIO received from VELASQUEZ
on March 18, 2004 and supplied to PATRON.

56.   At approximately 4:10 p.m., surveillance was
established on JIMENEZ GROCERY at 112 Parker St. Lawrence, MA.
At approximately 4:30 p.m., agents observed a 1991 blue Honda
Accord bearing MA reg. 60TZ09, registered to Lorenzo VELASQUEZ at
38 Essex St. S. Lawrence, MA, parked in front of JIMENEZ GROCERY,
unoccupied.    At approximately 4:42 p.m., agents observed a male

fitting the description of VELASQUEZ exit JIMENEZ GROCERY wearing a waist length leather coat and a baseball cap.  Agents observed the male enter the Honda Accord and drive away.  Agents followed the Honda to 187-189 Sanborn St, Lawrence, MA and observed it park at the edge of the driveway.  I believe VELASQUEZ went to JIMENEZ GROCERY to pick up the "100 pesos" that PATRON had dropped off for the drugs, which he supplied to ROSARIO the day before, and then brought the currency back to his residence at 187-189 Sanborn Street, Lawrence, MA.

57.  At 6:29 p.m., ROSARIO received a call from Isa JIMENEZ, who advised him that the "guards," not the "regular guards," were parked across the street from the store.  ROSARIO told her to shut the store.  At this time, agents were still conducting surveillance outside of JIMENEZ GROCERY.  I believe that JIMENEZ observed the agent's surveillance and called ROSARIO to alert him to the fact.

**February 22, 2004**

**DOMINGUEZ, ROSARIO**

58.  On February 22, 2004, at approximately 2:56 p.m., ROSARIO received a call from DOMINGUEZ using (978) 853-8628, subscribed to Anselmo DOMINGUEZ, 82 Temple Street, Haverhill, MA. During the call, ROSARIO asked DOMINGUEZ if he could get "six or seven pesos" and, in return, ROSARIO would give DOMINGUEZ the same "recipe" for a week.  DOMINGUEZ then told ROSARIO that he needed to call a third party.  I believe that ROSARIO was

attempting to collect a drug debt from DOMINGUEZ and was asking

for $6,000 to $7,000. I further believe that ROSARIO was telling

DOMINGUEZ that he would supply him with additional drugs if

DOMINGUEZ paid the debt.

**February 23, 2004**

**ROSARIO, MAGA, 1855 Washington Street #5J, Roxbury, MA**

59. On February 23, 2004, ROSARIO placed a call to (617)

442-5856 and spoke with "HECTOR", whom I believe is MAGA.

ROSARIO said: "I forgot to tell you, go do that errand so that we

can buy a whole pizza." MAGA agreed. I believe ROSARIO was

asking MAGA to pick up some money so that they could purchase

another quantity of drugs. Later that evening, agents observed

Hector MAGA arrive at JIMENEZ GROCERY and depart in a Ford

Expedition, registered to MAGA at 1855 Washington Street #5J,

Roxbury, MA, the same address as the subscriber to Hector

telephone.

**ROSARIO, ESPINO, CASTRO**

60. On the same day, February 23, 2004, ROSARIO received an

incoming call from (917) 216-7500 and spoke with ESPINO. ESPINO

stated that he was talking with the people that would send Luis

(a reference, I believe, to CASTRO) and told them that ROSARIO

had a person that could go "down there." ESPINO asked who the

person was and ROSARIO stated: "a good person". ESPINO added:

"No, he wants to know if someone knows him because a lot of weird

things have happened around here." ROSARIO assured him "it's a

really good person". ESPINO stated that he told me that he wants
to get someone for that, then he told me to call you and then to
call him back." ROSARIO stated he was going to call the person
right away and would call ESPINO back as soon as he did.  Two
minutes later, ROSARIO received another incoming call from ESPINO
and asked ESPINO: "and why don't you do that with Luis?" ESPINO
responded: "Because Luis doesn't even go that way and Luis goes
with other people." ROSARIO asked ESPINO why he didn't talk to
Luis and see if he would make "a special trip for you." ESPINO
said he would ask him.  ESPINO went on to explain in somewhat
coded conversation certain problems he had with Luis in the past.
I believe that Luis is a reference to CASTRO.

     61.  ROSARIO received another incoming call from ESPINO
later that day.  ROSARIO asked ESPINO why he didn't talk to Luis
"and see if he'll make a special trip for you." ESPINO said he
would ask him.  ESPINO continued to discuss, in coded terms, some
issues he had with Luis and the other people.  At one point
Rosario said "then don't tell him (referring to Luis) anything."
ESPINO responded: "No, no because that's why, because Luis
already did that to me.  When stuff came in, that I sent you,
this guy told me, for the 22 to me (a reference, I believe to
$22,000 per kilogram of cocaine).  Then he came over and said no
to him, they know him better than me, do you understand?" ESPINO
continued: "So then Luis went and told him you that I'll take let
me in on it too and this and that." At one point, ROSARIO

stated: "the other day he (Luis) gave me a 'girl.'" ESPINO
replied: "Yeah. He told me. He always calls me." I believe the
reference to a girl was to a quantity of drugs that CASTRO
delivered to ROSARIO.

62. During another call from ESPINO to ROSARIO that night,
ROSARIO asked ESPINO if he had "the car to go to the Bronx."
ESPINO said no and ROSARIO asked: "Oh, the person has to look for
a car here?" ESPINO replied: "yes, (unintelligible) with
everything." ROSARIO also asked whether Luis wanted to do
anything "over there" and ESPINO explained that on some prior
occasion Luis had difficulty dealing with the individuals from
whom I believe ESPINO and Luis are intending to pick up drugs.
They then had a discussion about possibly sending other "good
people." ESPINO indicated that "Papucho supposedly has some
people there" and ROSARIO agreed, stating: "Yes, Papucho knows
all those people, he knows people that I know. I know that."
ROSARIO advised ESPINO to talk with Papucho and ESPINO agreed to
talk to him right away. I believe that ROSARIO and ESPINO were
discussing who should be sent down to pick up a shipment of drugs
and were discussing obtaining a car with a hide to transport
drugs.

**VELASQUEZ, ROSARIO, JIMENEZ GROCERY**

63. At approximately 6:41 p.m., ROSARIO placed a call to
VELASQUEZ at (978) 590-1716, subscribed to Lorenzo VELASQUEZ, 38
Essex Street, Haverhill, MA. During the call, ROSARIO told

VELASQUEZ to come down. Less than an hour later, at

approximately 7:32 p.m., agents observed a dark colored Honda (MA

Reg. 60TZ09), registered to Lorenzo VELASQUEZ arrive and park in

front of JIMENEZ GROCERY. Agents observed VELASQUEZ exit the

vehicle and enter the store. After a few minutes, agents

observed VELASQUEZ exit the store and depart in the Honda.

Agents followed VELASQUEZ to 187-189 Sanborn Street, Haverhill,

MA.

**TUTO, ROSARIO, 73 East Haverhill Street #2A, Lawrence, MA**

64.    At approximately 7:17 p.m., ROSARIO placed a call to a

male referred to as "TUTO" at (978) 682-6409, a residential

telephone subscribed to Jose GARABITO and installed at 73 East

Haverhill Street #2A, Lawrence, MA. During the call, "TUTO" told

ROSARIO that he gave "that thing" to the kid in front, and

ROSARIO stated, "that's fine". TUTO then told ROSARIO that he

had to give back "400 pesos" for that "other" (a reference, I

believe, to a quantity of drugs that was returned because it was

of poor quality). TUTO then stated: "people are hungry"

(referring, I believe to people needing drugs) and asked ROSARIO,

"do you have anyone that can?" ROSARIO stated, "no, not with

that." ROSARIO stated that he was going to go by in a little

while and TUTO told ROSARIO to call him when he came down. TUTO

stated that he wanted to talk to ROSARIO about BATISTA, who had

told him that he was going to resolve his "medication issue". (A

male referred to as BATISTA has also been intercepted over Target

Telephone #1 talking with ROSARIO about the delivery of some type of drug and the collection of drug proceeds.)  Less than half an hour later, at approximately 7:43 p.m., agents observed ROSARIO exit JIMENEZ GROCERY and depart in his white Oldsmobile.  Agents followed ROSARIO to the vicinity of 73 East Haverhill Street, Lawrence, MA and observed a Hispanic male enter the passenger side of ROSARIO's white Oldsmobile.  Agents then observed the Oldsmobile depart the area with the two males.  About 17 minutes later, at 8:00 p.m., agents observed ROSARIO's White Oldsmobile arrive back and pull over near 73 East Haverhill Street and observed the aforementioned Hispanic male exit the car and walk towards 73 East Haverhill Street, Lawrence, MA.  I believe ROSARIO engaged in a drug-related transaction during the trip.

**February 24, 2004**

**TUTO, ROSARIO**

65.  On February 24, 2004, ROSARIO placed a call from Target Telephone # 1 to (978) 994-6189.  Agents intercepted a conversation between TUTO, who was with ROSARIO, and an unknown male referred to as Marino.  TUTO stated: "tell your friend that buys things that I have a friend that has something the way we like." He added: "tell him that is good, no like before. Some good people." Marino asked: "at the same, or different?" TUTO replied: "different." Marino asked: "the numbers." TUTO replied: "22, the same, I'll leave it to you at 8. I'm going home. Call me in twenty minutes." Marino asked: "about the others, did you